THE PEOPLE *ex rel.* THE DEPARTMENT OF REVENUE, Plaintiff-Appellant, v. JAMES COUNTRYMAN, Defendant-Appellee.

Second District   No. 2—87—0162

Opinion filed October 23, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones

Stewart, Solicitor General, and Eddie Santiago, Assistant Attorney General, of Chicago, of counsel), for appellant.

John H. Maville, of Law Offices of John H. Maville, of Belvidere, for appellee.

JUSTICE HOPF delivered the opinion of the court:

The plaintiff, Illinois Department of Revenue (Department), appeals from the order of the circuit court which denied its motion to reinstate its complaint against the defendant, James Countryman, after the court had dismissed the complaint for want of prosecution. On appeal, the plaintiff contends that the court abused its discretion since the record demonstrated that the plaintiff was actively pursuing discovery in this matter and, also, that the attorney's failure to appear was inadvertent. For the reasons set forth below, we reverse.

On October 6, 1978, the plaintiff filed a complaint against the Countryman Lumber Company seeking to collect unpaid taxes, penalties and interest pursuant to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 440 *et seq.*) and section 8—11—1 of the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 24, par. 8—11—1). The court entered a default judgment against the corporation on April 27, 1979. The corporation had been dissolved by the Secretary of State prior to the default judgment, on December 1, 1978.

On May 22, 1981, the plaintiff filed an action against James Countryman, individually, and contended that he was personally liable for the above judgment pursuant to section 13½ of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 452½). On June 16, 1981, the original summons was returned "not found," although service was obtained by serving the Secretary of State on February 2, 1982. The defendant entered an appearance and filed an answer to this complaint. The plaintiff then filed interrogatories on January 11, 1983. In response, the defendant filed objections to the interrogatories. Fifteen months later, the case was placed on the peremptory call. At that call, the plaintiff voluntarily dismissed the case.

On May 18, 1984, the plaintiff filed a complaint against the defendant seeking to collect unpaid taxes pursuant to section 5 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 444). The complaint noted, *inter alia*, that the court had entered a judgment of default against the Countryman Lumber Company, of which the defendant was the president, in the amount of $10,280 plus costs. It was further alleged that the defendant had become personally liable

for the taxes following the company's dissolution on December 1, 1978. The complaint demanded judgment against the defendant for the sum of $14,431 in unpaid taxes plus penalties and interest.

On July 11, 1984, the court denied the defendant's motion to dismiss the complaint for failure to file it within the applicable statute of limitations. On February 20, 1985, the court denied the defendant's second motion to dismiss, which presented the same argument. On March 13, 1985, the defendant filed a third motion to dismiss which argued that the complaint failed to set forth facts sufficient to allege wilful conduct. On July 30, 1985, the court granted the defendant's motion to dismiss. Thereafter, the plaintiff filed a motion to reconsider which the court granted on August 14, 1985. Subsequently, the case was placed on the trial call for October 23, 1986. On that day, with the plaintiff not attending, the case was removed from the trial call and continued until December 3, 1986, for status. The record sheet for October 23, 1986, indicates that the defendant's counsel was to notify the plaintiff of the December 3, 1986, status call.

At the December 3, 1986, status call the plaintiff failed to appear, and the court dismissed the case for want of prosecution. On January 29, 1987, the court denied the plaintiff's motion to reinstate. The plaintiff then filed this timely appeal.

On appeal, the plaintiff argues that the court erred when it denied its motion to reinstate in view of evidence that counsel had been diligently proceeding in the case and counsel's failure to attend the December status hearing was inadvertent.

■■ The determination that there has been a lack of diligent prosecution warranting dismissal is within the sound discretion of the trial court and should not be disturbed on appeal unless there has been an abuse of discretion. (*In re Marriage of Hanlon* (1980), 83 Ill. App. 3d 629, 632, 404 N.E.2d 873.) Dismissal for want of prosecution, however, is error unless the party has been guilty of inexcusable delay in prosecuting the suit. (*Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 463, 350 N.E.2d 103; *Polowick v. Meredith Construction Co.* (1975), 29 Ill. App. 3d 1092, 1097, 332 N.E.2d 17.) Moreover, a dismissal for want of prosecution should be set aside where a satisfactory explanation of the apparent delay has been given, there has been no intentional or wilful disregard of any directions of the court, and it does not appear that further postponement of a controversy on its merits would result in prejudice or hardship to any of the parties. *In re Marriage of Dague* (1985), 136 Ill. App. 3d 297, 299, 483 N.E.2d 322.

■ The inherent power of Illinois courts to dismiss a lawsuit for

want of prosecution is based on the necessity of preventing undue delays in the disposition of pending cases and avoiding congestion in the progress of the trial calendars. (*Bender v. Schallerer* (1973), 9 Ill. App. 3d 951, 952-53, 293 N.E.2d 411.) This power, however, must be exercised by giving more weight to basic concepts of fundamental fairness and justice than to procedural matters. (*Deardorff v. Decatur & Macon County Hospital Association* (1969), 111 Ill. App. 2d 384, 388, 250 N.E.2d 313.) Whether substantial justice is being done between the litigants and whether it is reasonable under the circumstances to compel the other party to go to trial on the merits are the overriding considerations. *People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 406, 270 N.E.2d 841.

Not every involuntary dismissal, however, can be said to do disservice to the goal of substantial justice. (*Deardorff v. Decatur & Macon County Hospital Association* (1969), 111 Ill. App. 2d 384, 388, 250 N.E.2d 313.) Although it is clearly preferred that cases be decided upon their merits and that determinations based upon procedural and rule violations be avoided, flagrant and continued infringements of procedures and rules cannot be tolerated. *Brantley v. Delnor Hospital, Inc.* (1970), 120 Ill. App. 2d 185, 192, 256 N.E.2d 369.

■■ In the present case the plaintiff asserts that it had been diligently proceeding in the case since July 1, 1986, when it was assigned to Assistant Attorney General J. Michael West. At the hearing on the plaintiff's motion to reinstate on January 29, 1987, West explained that soon after he was assigned, he contacted the defendant's attorney because the corporate records had allegedly been lost by the defendant and, thus, it was going to be difficult for the State to prove its case. West further explained that he had received written correspondence from the defendant's attorney on July 30, 1986, and that he had returned correspondence on August 26, 1986. According to West, the parties had agreed that discovery depositions would be necessary prior to any further hearings. He also explained that prior to the October 23, 1986, hearing, the parties had stipulated that this case should be generally continued. West stated that he repeatedly attempted to set up the depositions. An affidavit of West's secretary stated that ultimately she contacted the defendant's attorney but was informed that he would have to contact the defendant. This conversation occurred two weeks before the December 3, 1986, status hearing. In addition, according to West, the letter purportedly sent on November 12, 1986, by the defendant's counsel, notifying the plaintiff of the status call, did not have a proof of service and was sent to the De-

partment of Revenue, in care of a local regional attorney, and also to another attorney, Lynn Travis, despite the fact that the defendant's attorney should have been aware that West was working on the case.

In denying the plaintiff's motion to reinstate, the court took note of this case's lengthy history and observed that due to a "high turnover of assignment and perhaps a high turnover in employment," attorneys sometimes do not get the required notices of hearings and fail to appear on the scheduled date. According to the court, sometimes the notices are sent to previous counsel who were on the case, and the correct party, assuming that the local office is going to appear, does not appear. The court then concluded, "I think the Attorney General's office is just going to have to establish a better system for making sure that parties who are in charge of the case *** are the ones who appear in court not the ones who are notified when any correspondence arrives." In our opinion the court's general concern with the way the Attorney General's office handles its cases is not a proper ground for dismissing the plaintiff's complaint for want of prosecution in the present case. We agree that this case has had a lengthy history. However, a careful review of the record demonstrates that the plaintiff was indeed pursuing the case and intended to proceed in the matter to its conclusion.

First, the plaintiff filed the complaint in 1984 to collect taxes due pursuant to a default judgment won in 1978 against the defendant. An earlier complaint to collect the taxes in 1981 had been voluntarily nonsuited in 1983. The record does not suggest that this action was taken due to lack of diligence. From 1981 through 1983 the record demonstrates that the plaintiff pursued this matter. During that time the plaintiff served the defendant with notice of its complaint, and the defendant subsequently entered an appearance and answers thereto. The plaintiff filed interrogatories, and the defendant filed objections. From 1984 through 1986, the plaintiff also pursued the case, as demonstrated by the following actions:

1. After the plaintiff refiled its complaint on May 18, 1984, the defendant filed a motion to dismiss in July 1984.

2. On July 11, 1984, the plaintiff appeared for the hearing on the defendant's motion to dismiss, but the defendant failed to appear. The court denied the defendant's motion.

3. On August 7, 1984, the defendant filed its second motion to dismiss. On August 9, 1984, the court heard oral argument and continued the case to February 20, 1985. On that date, after oral argument, the court denied the defendant's motion to dismiss.

4. On March 13, 1985, the defendant filed a third motion to dismiss. On July 30, 1985, after oral argument, the court granted the defendant's motion to dismiss.

5. On August 7, 1985, the plaintiff filed a motion to reconsider, which the court granted on August 14, 1985.

6. On July 16, 1986, the plaintiff appeared for a peremptory call, and the case was ordered set for trial. On October 23, 1986, the case was removed from the trial call and continued to December 3, 1986, for status. The defendant was to notify the plaintiff of the December status call.

7. At the status call the plaintiff failed to appear, and the court dismissed the action for want of prosecution.

8. On December 31, 1986, the plaintiff filed a motion to reinstate. At the hearing held on January 29, 1987, the plaintiff argued that counsel did not get notice of the December status call and inadvertently failed to appear.

It is clear that with the exception of the status hearing, the plaintiff has attended every hearing it was summoned to attend and argued its case. Furthermore, these facts demonstrate that the plaintiff was attending to its case and was litigating it. Apparently, the failure of the plaintiff to appear arose from a misdirection of notices at the Attorney General's office rather than a disregard for, or avoidance of, the court's order. Dismissal for want of prosecution is improper and should be set aside where a satisfactory explanation is given, there was no intentional or wilful disregard of the court's order, and it does not appear that further postponement would result in prejudice or hardship to any of the parties. *In re Marriage of Dague* (1985), 136 Ill. App. 3d 297, 299, 483 N.E.2d 322.

We do not wish to appear to condone the Attorney General's system of handling cases as described by the trial court. However, we do not believe that in view of the *entire history* of the case that the Attorney General's office was wilfully or intentionally bringing about a delay. (Compare *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 236 N.E.2d 719 (court refused to vacate final judgment in defendant's favor 19 months after fact despite plaintiff's excuse that she had no knowledge of pretrial conference).) In view of the fact that this is the only time in the record that the plaintiff failed to appear and, furthermore, the plaintiff reacted quickly to the dismissal, having petitioned the court within 30 days, in our opinion the plaintiff's failure to appear in this case was not an indication of a lack of overall diligence. Compare *Elward v. Mancuso Chevrolet, Inc.* (1970), 122 Ill. App. 2d 421, 259 N.E.2d 344 (court refused to vacate dismissal for

want of prosecution where case had been continued 15 times over a two-year period, evidence failed to demonstrate defendant was responsible, and plaintiff was not prepared to proceed on trial date).

Accordingly, for the reasons set forth above the judgment of the circuit court of Boone County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

INGLIS and REINHARD, JJ., concur.